1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

9    LAWRENCE EVERETT WILGUS,          Case No. 3:13-cv-00368-MMD-WGC

10                        Plaintiff,              ORDER

11        v.

12   BRUCE BANNISTER, et al.,

13                        Defendants.

## I.    SUMMARY

Before the Court is the Report and Recommendation of United States Magistrate Judge William G. Cobb ("R&R") relating to Plaintiff's Motion for Partial Summary Judgment (dkt. no. 27) and Defendants' Cross-Motion for Summary Judgment (dkt. no. 30). (Dkt. no. 42.) Plaintiff has filed an objection to the R&R (dkt. no. 43) and Defendants have filed a response (dkt. no. 47).

## II.   RELEVANT FACTS

This case arises from conduct that allegedly occurred during Plaintiff's incarceration from June 8, 2011, to February 2, 2012, at three correctional institutions within the Nevada Department of Corrections: Northern Nevada Correctional Center ("NNCC"), Humboldt Conservation Camp ("HCC"), and Lovelock Correctional Center ("LCC").[1] Plaintiff challenges two types of conduct: (1) the entry of a false escape

_____

[1]Plaintiff pleaded guilty to buying, receiving, possessing or withholding stolen property and was sentenced to a minimum term of not less than one (1) year and a maximum term of not more than four (4) years. (Dkt. no. 6 at 4.)

1   charge in his records that led to his transfer from HCC; and (2) the delay and

2   inadequate medical care at LCC and NNCC between July 18, 2011, and February 2,

3   2011.[2]

4        The following facts are taken from Plaintiff's Amended Complaint. (Dkt. no. 6.)

5   On July 12, 2011, about a month after Plaintiff began to serve his sentence at NNCC,

6   Plaintiff was transferred to HCC, a minimum custody camp "per Classification

7   Committee results." (*Id.* at 14.)   On July 18, 2011, Plaintiff's fiancée, Tina Atkinson,

8   called defendant Steve Suwe relating to "program information and parole procedures"

9   on Plaintiff's behalf.[3] (*Id.* at 15; dkt. no. 27 at 8.) After Atkinson provided Suwe with

10  Plaintiff's name and ID, Suwe became rude and told Atkinson that Plaintiff "is an

11  escapee and that he should not be in camp" and that Suwe would "fix that right now!"

12  (Dkt. no. 6 at 15.) Plaintiff "was forcefully detained" and "transferred from HCC to LCC"

13  after Suwe changed Plaintiff's records to reflect the false escape charge, "which caused

14  a serious injury to his left shoulder."[4]   (*Id.*) Plaintiff made attempts to resolve this false

15  escape charge, including requesting a classification review and filing grievances.

16  Plaintiff later received a response stating that a date was entered incorrectly — the

17  escape incident had occurred in 2003 but had been incorrectly entered as occurring in

18  2006. On November 9, 2011, Plaintiff had a classification review but was denied

19  minimum security.

20  ///

21  ///

22  ///

---

23  [2]The R&R divides the allegations in the Amended Complaint into these two
24  subject areas. Plaintiff does not dispute this characterization. The Court agrees with the
    Magistrate Judge's characterization and adopts it here.

25  [3]Suwe was the Public Information Officer for NDOC during Plaintiff's
26  incarceration. Plaintiff alleges that Suwe was responsible for recording and maintaining
    inmate records in the Nevada Offender Tracking Information System ("NOTIS"). (Dkt.
27  no. 6 at 12-13.)

    [4]Plaintiff appears to allege that this shoulder injury was caused by defendant Mr.
28  Doe A. (Dkt. no. 6 at 16.)

1    After his transfer to LCC, Plaintiff sought treatment for his shoulder injury, along
2    with other medical and dental issues,[5] and while he was told he would be transferred to
3    NNCC for treatment, he was not transferred for over two months. There continued to be
4    delays even after Plaintiff got to NNCC, and he was not seen for his shoulder pain until
5    November 2, 2011.  At that appointment, Dr. Long was concerned about "the winging of
6    the scapula" and recommended an MRI. (Dkt. no. 6 at 24.) Plaintiff had an MRI
7    performed on his shoulder on December 26, 2011. During his January 4, 2012,
8    appointment, Dr. Gedney made notes of the MRI results and of his shoulder limitation
9    and prescribed medications for joint relief and recommended shoulder exercise.

10    Plaintiff asserts claims under 42 U.S.C. § 1983 against nineteen defendants.
11    (Dkt. no. 6 at 3-13.) He alleges violations of his rights under the Fourth Amendment
12    (Counts I-III), Eighth Amendment (Counts IV, VI-IX) and Fifth and Fourteenth
13    Amendments (Count V). Plaintiff moved for partial summary judgment and Defendants
14    moved for cross summary judgment. (Dkt. nos. 27, 30.) The Magistrate Judge
15    recommends denying Plaintiff's motion and granting Defendants' motion. (Dkt. no. 42.)

16    **III.  LEGAL STANDARD**

17    **A.    Review of the Magistrate Judge's R&R**

18    This Court "may accept, reject, or modify, in whole or in part, the findings or
19    recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party
20    timely objects to a magistrate judge's report and recommendation, then the court is
21    required to "make a *de novo* determination of those portions of the [report and
22    recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). Where a party
23    fails to object, however, the court is not required to conduct "any review at all . . . of any
24    issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).
25    Indeed, the Ninth Circuit has recognized that a district court is not required to review a
26    ///

27
28    [5]The Amended Complaint offers an essential outline of medical and dental issues that Plaintiff experienced during his period of incarceration after the transfer from LCC. Plaintiff's Objection focuses only on his shoulder injury.

magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection."). Thus, if there is no objection to a magistrate judge's recommendation, then the court may accept the recommendation without review. *See, e.g.*, *Johnstone*, 263 F. Supp. 2d at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed).

### B.     Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the
///

4

1  nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103

2  (9th Cir. 1986).

3       The moving party bears the burden of showing that there are no genuine issues

4  of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In

5  order to carry its burden of production, the moving party must either produce evidence

6  negating an essential element of the nonmoving party's claim or defense or show that

7  the nonmoving party does not have enough evidence of an essential element to carry its

8  ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

9  F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's

10  requirements, the burden shifts to the party resisting the motion to "set forth specific

11  facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The

12  nonmoving party "may not rely on denials in the pleadings but must produce specific

13  evidence, through affidavits or admissible discovery material, to show that the dispute

14  exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do

15  more than simply show that there is some metaphysical doubt as to the material facts."

16  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (citation and internal

17  quotation marks omitted). "The mere existence of a scintilla of evidence in support of

18  the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

19  **IV.   DISCUSSION**

20       Plaintiff's Objection addresses four of the Magistrate Judge's recommendations.

21  Plaintiff argues that (1) the Magistrate Judge misunderstood the facts relating to the

22  entry of the false escape charge in recommending dismissal of the false escape claims

23  (Counts I, II and V); (2) a genuine issue of fact precludes summary judgment on the

24  Eighth Amendment deliberate indifference claims relating to Plaintiff's shoulder injury,

25  which was eventually diagnosed as a torn rotator cuff and a winged scapula (Counts IV,

26  VII, VIII, IX); (3) the Magistrate Judge incorrectly recommended dismissal of the "Due

27  Process and First Amendment claims"; and (4) the Magistrate Judge incorrectly

28  concluded that summary judgment should be granted as to Plaintiff's supervisory liability

1 claims. (Dkt. no. 43.) The Court will accept the Magistrate Judge's other

2 recommendations to which Plaintiff does not object. *See Reyna-Tapia*, 328 F.3d at

3 1114. The Court will address Plaintiff's arguments in turn.

4      **A.    Due Process**

5      Plaintiff's due process claims are based on his allegations that Suwe added the

6 false escape note in NOTIS, his transfer from LCC to NNCC, and his classification.

7      First and foremost, there is no dispute as to the 2003 incident. Plaintiff was

8 incarcerated in June 2003 at the Northern Nevada Restitution Center ("NNRC") when

9 he and another inmate were found to be out of bounds.  This led to a search and the

10 discovery that Plaintiff and the other inmate were drinking alcohol in the bushes along

11 the Truckee River, an area that was designated as off limits to NNRC residents.

12 Defendants offered evidence that Plaintiff was transferred to another facility and was

13 given a notice of disciplinary charges for being in an unauthorized area and failing to

14 follow rules and regulations. (Dkt. nos. 30-3, 30-4.) Plaintiff was found guilty of the

15 charges. (Dkt. no. 30-4 at 9.) Suwe's entry in NOTIS for July 18, 2011, describes this

16 incident and notes that the other inmate who was found with Plaintiff "fled out the door

17 and was on escape status for several weeks resulting in CS sentence for escape." (Dkt.

18 no. 27-8 at 8.)

19      In his Objection, Plaintiff argues that (1) the Magistrate Judge erroneously relied

20 upon the information that Suwe entered in NOTIS when the information is not correct;

21 (2) the Magistrate Judge failed to consider the discrepancy between Suwe's declaration

22 that Plaintiff was not eligible for NNRC after the 2003 incident and the fact that Plaintiff

23 was listed as eligible for minimum security during an intervening incarceration; and

24 (3) the Magistrate Judge failed to consider Suwe's intentions when he added the

25 information about the 2003 incident but stated that it occurred in 2006. However, the

26 Magistrate Judge's R&R thoroughly addresses these factual issues, including Plaintiff's

27 contention that on July 18, 2011, Suwe intentionally noted the 2003 incident as

28 ///

1    occurring in 2006, and Plaintiff's assertion that he was placed in minimum security
2    during an intervening period of incarceration.

3         More importantly, even accepting Plaintiff's allegations that when Suwe made the
4    note in NOTIS on July 18, 2011, he intentionally stated that the incident occurred in
5    2006 to make it appear more recent to cause a change in Plaintiff's classification status,
6    Plaintiff nevertheless cannot show that his liberty interest was affected. In fact, Plaintiff
7    concedes that he did not have a liberty interest in his classification. (Dkt. no. 27 at 17.)

8         The Fourteenth Amendment of the U.S. Constitution guarantees all citizens,
9    including inmates, due process of law. However, only certain interests receive the
10   guarantees of due process; an inmate's right to procedural due process arises only
11   when a constitutionally protected liberty or property interest is at stake. *Wilkinson v.*
12   *Austin*, 545 U.S. 209, 221 (2005). Therefore, courts analyze procedural due process
13   claims in two parts. First, the court must determine whether the plaintiff possessed a
14   constitutionally protected interest. *Brown v. Ore. Dep't of Corr.*, 751 F.3d 983, 987 (9th
15   Cir. 2014). Second, and if so, the court must compare the required level of due process
16   with the procedures the defendants observed. *Id.* A claim lies only where the plaintiff
17   has a protected interest, and defendants' procedure was constitutionally inadequate. *Id.*
18   The Court agrees with the Magistrate Judge that Plaintiff cannot show the first part of
19   the two part test: that he possessed a protected liberty interest.

20        Under the Due Process Clause, an inmate does not have liberty interests related
21   to prison officials' actions that fall within "the normal limits or range of custody which the
22   conviction has authorized the State to impose." *Sandin v. Conner*, 515 U.S. 472, 478
23   (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). The Due Process Clause
24   also does not protect "against transfer from one institution to another within the state
25   prison system." *Meachum*, 427 U.S. at 225. Thus, Plaintiff does not have a protected
26   liberty interest in not being transferred from HCC or in his classification.

27        Plaintiff concedes that he does not have a liberty interest under the Due Process
28   Clause, but he argues that NDOC's regulations create a liberty interest. (Dkt. no. 37 at

5-8.) State law also may create liberty interests protected under the Due Process Clause, but "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84. As the Ninth Circuit Court of Appeals recently observed, "*Sandin* and its progeny made this much clear: to find a violation of a state-created liberty interest the hardship imposed on the prisoner must be 'atypical and significant . . . in relation to the ordinary incidents of prison life.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013) (quoting *Sandin*, 515 U.S. at 483-84). Thus, under *Sandin*, Plaintiff may show a protected liberty interest not by reference to the language of NDOC regulations, but instead by demonstrating that the transfer from HHCC and the classification rises to the level of "atypical and significant hardship." *See id.*

When conducting the "atypical and significant hardship" inquiry, courts examine a "combination of conditions or factors . . . ." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). These conditions include: (1) "whether the conditions of confinement mirrored those conditions imposed upon inmates in analogous *discretionary* confinement settings"; (2) "the duration and intensity of the conditions of confinement"; and (3) whether the sanction extends the length of the prisoner's sentence. *See Chappell*, 706 F.3d. 1064-65 (citation and internal quotation marks omitted).

As the Magistrate Judge correctly found, Plaintiff cannot show that his transfer or classification satisfy this inquiry. Plaintiff did not contend otherwise in his summary judgment briefs or even in his Objection after the Magistrate Judge found that he cannot demonstrate that his conditions of confinement were atypical. Accordingly, the Court agrees with and adopts the Magistrate Judge's findings as to Plaintiff's due process claims.

### B.   Deliberate Indifference

Plaintiff contends that a genuine dispute precludes summary judgment, but he does not identify what facts are in dispute. Instead, Plaintiff recites selected dates when

he complained of pain in his shoulder, and points to the lack of notes about treatment for his shoulder pain when he was seen for other medical issues, and to the delay in sending Plaintiff for an MRI. Plaintiff then argues that "the Magistrate Judge mistakes 'seeing a doctor' as sufficient to overcome deliberate indifference for failure to treat a serious medical condition." (Dkt. no. 43 at 10.)

The Magistrate Judge thoroughly recited the facts relating to Plaintiff's shoulder pain, his complaints of pain, and the treatment he received from the time he complained of pain to his release from custody. (Dkt. no. 29-35.) As noted, Plaintiff does not explain which of the recited facts are not supported by the records or are in dispute. The following is a summary of the evidence relating to Plaintiff's shoulder injury.

On July 24, 2011, Plaintiff sent a kite complaining of shoulder pain. (Dkt. no. 31-2 at 38.) In a kite sent the next day, Plaintiff stated that when he was placed in handcuffs at HCC he "felt a tear in [his] shoulder" and complained that the pain was "extremely bad." (*Id.* at 39.) Plaintiff was seen on July 26, 2011, and said he experienced "significant pain," reduced range of motion and swelling on the scapula; he was prescribed pain medication and analgesic balm and instructed to kite to see Dr. Scott. (Dkt. no. 31-4 at 5.) When Plaintiff saw Dr. Scott the next day, Dr. Scott prescribed pain medication and analgesic balm. (*Id.*) Plaintiff sent two kites on August 9, 2011, and August 13, 2011, stating that his pain was getting worse and requesting a second opinion, but was told he would see the doctor when his test results came back.[6] (Dkt. no. 27-16 at 28; dkt. no. 31-2 at 31.) He was seen by Dr. Scott on August 25, 2011, and Dr. Scott recommended that Plaintiff be transferred to NNCC for evaluation of another medical issue. (Dkt. no. 31-4 at 5.) Between August 25, 2011, and Plaintiff's transfer to NNCC on September 29, 2011, Plaintiff filed grievances and sent kites about his medical issues, including pain relating to his shoulder. He was given an ibuprofen pack when he was seen on September 13, 2011. (Dkt. no. 31-3 at 7.)

---

[6]The test results related to another medical issue that Dr. Scott had noted when he saw Plaintiff on July 27, 2011.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

After his transfer to NNCC, Plaintiff was seen on October 3, 2011, regarding his shoulder pain and was given pain medication and scheduled for an appointment on October 19, 2011. (Dkt. no. 31-3 at 6.) That appointment was rescheduled to October 27, 2011, and, in the interim, Plaintiff was seen at sick call for his shoulder pain and issued ibuprofen. (*Id.*) At the October 27, 2011, appointment, an x-ray of Plaintiff's shoulder was performed with the results being normal, and he was referred to Dr. Long, an orthopedic specialist. (Dkt. no. 31-3 at 5; dkt. no. 27-17 at 71.) Dr. Long's notes of Plaintiff's November 2, 2011, consult reflect that that he "suspect[ed] a rotator cuff tear" and was "concerned about the winging of the scapula." (Dkt. no. 31-5 at 4.) He recommended an MRI. (*Id.)* When Plaintiff told Dr. Long that ibuprofen did not help much, Dr. Long recommended he talk to the NNCC doctor who had referred him (Dr. Gedney). (*Id.)* When Plaintiff saw Dr. Gedney on November 12, 2011, she referred him back to the orthopedic specialist, Dr. Long. (Dkt. no. 27-17 at 21.) The MRI request was approved on November 22, 2011, and performed on December 6, 2011. (Dkt. no. 27-17 at 60; dkt. no. 31-6 at 7-8.) On January 4, 2012, Plaintiff saw Dr. Gedney, who noted the results of his MRI and referred him to Dr. Long to discuss his recommended treatment. (Dkt. no. 31-3 at 2; dkt. no. 27-17 at 51.) During his appointment with Dr. Long on January 12, 2012, Dr. Long informed Plaintiff that he had AC joint arthritis, with a rotator cuff tear, but he did not recommend surgery at that time because Plaintiff was scheduled to be released in two weeks and "[h]e can do that on the outside." (Dkt. no. 31-5 at 3.) Dr. Long also noted that Plaintiff "definitely has winging of his scapula" but stated that "it is a wait and watch injury." (*Id.)*

The Eighth Amendment compels the state "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Medical care claims proceed under a two-part test. The plaintiff must satisfy "an objective standard — that the deprivation was serious enough to constitute cruel and unusual punishment — and [also] a subjective standard — deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Snow v. McDaniel*,

681 F.3d 978, 985 (9th Cir. 2012)) (internal citations and quotation marks omitted). The objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1090, 1096 (9th Cir. 2006). Serious medical needs are those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (citation and internal punctuation omitted).

The subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. First, only where a prison "official 'knows of and disregards an excessive risk to inmate health and safety'" is the subjective element satisfied. *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004)). Not only must the defendant prison official have actual knowledge from which he or she can infer that a substantial risk of harm exists, but he or she "must also draw that inference." *Id.* at 837. The standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other[,]" *Farmer v. Brennan*, 511 U.S. 825, 836 (1994), and does not include accidental or unintentional "failure[s] to provide adequate medical care." *Estelle*, 429 U.S. at 105-06. Second, the defendants' conduct must consist of "more than ordinary lack of due care." *Farmer*, 511 U.S. at 835. The medical care due to prisoners is not limitless, as "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Prison officials are not, therefore, deliberately indifferent simply because they selected or prescribed a course of treatment or care different than the one the inmate requests or prefers. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir. 2007). Only where the prison's chosen course of treatment is "medically unacceptable under the circumstances" are the officials' medical choices constitutionally infirm. *Colwell*, 763 F.3d at 1068 (quoting *Snow*, 681 F.3d at 988) (internal quotation marks omitted).

1    Finally, the plaintiff must prove that he was harmed, although the harm need not be

2    substantial. *Jett*, 439 F.3d at 1096.

3        Plaintiff cannot demonstrate the subjective element required to show deliberate

4    indifference. The records recited above show that the named defendants involved in

5    caring for Plaintiff's shoulder pain selected treatment options that he did not agree with,

6    and that they may not have responded as quickly as he wanted them to, but their

7    conduct does not amount to "more than ordinary lack of due care." *See Farmer*, 511

8    U.S. at 835. The Court thus agrees with the Magistrate Judge's finding as to Plaintiff's

9    deliberate indifference claims.

10       **C.    First Amendment Claim**

11       Plaintiff characterizes the Magistrate Judge's ruling as dismissal of his "Due

12   Process and First Amendment claims" and argues that he has pleaded sufficient facts to

13   show these rights were violated.  Plaintiff's Objection is rather confusing since his due

14   process claims were addressed separately. The Magistrate Judge correctly noted that

15   Plaintiff presented a First Amendment retaliation claim for the first time in his motion for

16   summary judgment, and that the Amended Complaint does not support this claim. The

17   Magistrate Judge declined to address Plaintiff's First Amendment claim as not properly

18   asserted. The Court agrees and adopts the Magistrate Judge's findings with respect to

19   Plaintiff's attempt to improperly assert a First Amendment claim.

20       **D.    Supervisory Liability**

21       Plaintiff challenges the Magistrate Judge's finding that supervisors of employees

22   who were involved in providing medical care to Plaintiff are not liable because they did

23   not treat Plaintiff. However, the Court's finding that Plaintiff cannot establish claims of

24   deliberate indifference with respect to his medical care renders moot Plaintiff's objection

25   as to supervisory liability.

26   **V.    CONCLUSION**

27       The Court notes that the parties made several arguments and cited to several

28   cases not discussed above. The Court has reviewed these arguments and cases and

determines that they do not warrant discussion as they do not affect the outcome of the parties' motions or Plaintiff's Objection.

It is therefore ordered, adjudged and decreed that the Report and Recommendation of Magistrate Judge William G. Cobb (dkt. no. 42) is accepted and adopted in its entirety. Plaintiff's Motion for Partial Summary Judgment (dkt. no. 27) is denied. Defendants' Cross-Motion for Summary Judgment (dkt. no. 30) is granted. The Clerk is directed to enter judgment in Defendants' favor and close this case.

DATED THIS 31st day of March 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE